Charles MORGAN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 172, 2006.

Supreme Court of Delaware.

Submitted: Jan. 10, 2007.
Decided: March 29, 2007.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

HOLLAND, Justice.

This is the defendant-appellant's, Charles Morgan ("Morgan"), appeal from final judgments that were entered by the Superior Court. Following a jury trial, Morgan was convicted of Attempted Murder in the First Degree and Possession of a Firearm During the Commission of a Felony. Morgan and his co-defendant, Paul Fahmy ("Fahmy"), were tried together. The State's case against Morgan was based upon the theory of accomplice liability.

In this direct appeal, Morgan has raised three issues. First, he argues that the Superior Court erroneously denied his motion for a judgment of acquittal. Second, Morgan argues that the Superior Court erred by permitting the State to introduce a narrative summary as a prior statement under Title 11, section 3507 of the Dela-

ware Code. Finally, Morgan argues that certain portions of the prosecutor's closing argument constituted plain error.

We have concluded that the motion for a judgment of acquittal was properly denied and that the State's closing argument did not result in plain error. We have also concluded, however, that the Superior Court committed reversible error when it admitted a narrative summary into evidence as a prior statement under section 3507. Therefore, the judgments of the Superior Court are reversed and this matter is remanded for a new trial.

### Facts

One evening in October, 2004, Charles Morgan ("Morgan") and his friend Mitzie Osorio ("Osorio") took a ride in Osorio's car. The two then picked up Morgan's friend, Darnell Lane ("Lane"). At some point during the course of the evening, Morgan left the car briefly, leaving Lane and Osorio alone.

While the two were alone, Lane asked Osorio if he could borrow her CD player. He also purportedly asked her to engage in oral sex. Osorio refused both requests. After Morgan returned to the car, the three proceeded to Lane's house and dropped him off.

When Osorio looked in the back seat of the car, she noticed that her CD player was missing, and told Morgan about her earlier conversation with Lane. Morgan told Osorio that he would talk to Lane and get her CD player back. Morgan then drove her home and walked to his own house.

A few days later, on October 14, 2004, Lane was sitting outside his girlfriend's house in Wellington Woods when Morgan drove up in Osorio's car. In the passenger seat of the car was Paul Fahmy ("Fahmy"). All three were acquaintances. Upon arrival at the house, Lane and Mor-

gan argued over whether Osorio had agreed to lend the CD player to Lane. Lane then returned Osorio's CD player.

Lane then joined Morgan and Fahmy in the car. The three men left Lane's house in Osorio's car with Morgan driving. They were drinking. Morgan told Lane that they were going to meet up with some girls. Morgan eventually stopped the car near a wooded area. The three men walked down a path in the woods where a rendezvous with the girls was to occur.

As they walked, Lane asked where the girls were, and Morgan answered that they were just ahead. Lane was facing away from Fahmy and Morgan, when he heard a gunshot and saw a flash coming from Fahmy. Lane was shot in the head. Miraculously, Lane not only survived the shooting, but also was able to stay on his feet and run away.

### Interpretative Narrative Inadmissible

■ Osorio was called as a witness for the State at trial. The prosecutor asked Osorio about a conversation she had with the chief investigating police officer, Teresa Williams ("Detective Williams"). The trial record reflects that Osorio did not remember the date, time or content of her purported statement.

Question: When Detective Williams stopped at your apartment this past September, can you explain those circumstances?

Answer: I can't remember what I said. I don't know. You know, I just can't remember what happened at that time. I did know she came to my apartment, though, yes, informed me that I would be getting, you know, information from the court, etc., setting up a meeting, etc.

Question: Did she talk to you about testifying in these proceedings?

Answer: I'm trying to think. I just really can't remember.

The State interrupted Osorio's direct testimony to call Detective Williams to the witness stand. The purpose was to introduce into evidence, pursuant to Title 11, § 3507 of the Delaware Code, a statement made to Detective Williams by Osorio. "Statements offered under section 3507 must be offered before the conclusion of the direct examination of the declarant."[1]

Counsel for both defendants objected because they had not been provided with copies of Osorio's statement before trial. The prosecutor explained that this statement had not been provided because it had not been recorded, and had not been summarized or even referenced by Detective Williams in any of her police reports.

The prosecutor argued that the statement given to Detective Williams by Osorio had independent relevance, because the statement indicated that the relationship between Osorio and Morgan was considerably closer than Osorio had characterized it in her direct examination. The trial judge overruled the defense objections, and permitted the prosecutor to question Detective Williams about her conversation with Osorio.

Detective Williams testified that some time before trial, she learned that Osorio was going to move from her residence to the Admiral's Club Apartments in Newark. Detective Williams called the apartment office to confirm this and was told that, although Osorio was presently living there, she was in the process of moving out "that very day." Detective Williams immediately drove to the Admiral's Club Apartments and located Osorio. She told Osorio about the importance of keeping the police informed of her address because Morgan's trial was approaching and she would be called as a witness.

According to Detective Williams, Osorio became upset and said that she did not want to get Morgan into trouble. Detective Williams and Osorio then talked about the nature of Osorio's relationship with Morgan. Detective Williams' recollection of her conversation with Osorio was admitted into evidence as a statement by Osorio under section 3507.

Morgan argues the trial judge erroneously permitted Detective Williams to deliver an "interpretive narrative" of Osorio's statement, contrary to this Court's holding in *Huggins v. State*[2] and its progeny, *e.g.*, *Flonnory v. State*[3] and *Hassan–El v. State*.[4] The following is an excerpt from Detective Williams' testimony at trial:

Question: When you spoke with Ms. Osorio in that apartment, did you take any notes?

Answer: The only notes that I recall taking at that particular time were notes on where she was staying.

Question: Did you take any notes about the substance of what she told you?

Answer: No.

Question: So all of this that you've testified to has come off the top of your head from your memory?

Answer: Yes.

Question: And that's about five months ago, four months ago?

Answer: Yes.

---

1. *Barnes v. State*, 858 A.2d 942, 944 (Del. 2004).

2. *Huggins v. State*, 337 A.2d 28 (Del.1975).

3. *Flonnory v. State*, 893 A.2d 507, 523 (Del. 2006).

4. *Hassan–El v. State*, 911 A.2d 385 (Del. 2006).

Question: You had the opportunity to write a police report about this information, correct?

Answer: Yes.

Question: Did you do that?

Answer: No. .

Question: So you consciously chose not to write a report about this information?

Answer: Yes.

Question: And it's not been reduced to writing in any way?

Answer: No.

More than thirty years ago, in *Huggins v. State*, this Court held:

It is the statement of the declarant that is being admitted, not the interpretative narrative of the person who heard the statement. Care should be taken to guarantee that the Statute is not abused by permitting a witness, such as a police officer, to embellish the prior statement by his own interpretation, even if the embellishment is made in the utmost good faith. Obviously, the best protection in this regard is a written statement. In the case of oral statements, the best safeguard would seem to be in foundation questions establishing the time, the place and the person to whom the statement was made. These are the traditional safeguards in treating a witness fairly when impeaching him by a prior inconsistent statement. It would seem that no less a standard should be required for evidence having substantive independent testimonial value.[5]

The record reflects that Detective Williams spoke with Osorio at an unknown date and time in September 2005. The record also reflects that Osorio's "statement" was neither recorded nor documented in any way: Detective Williams took no notes at the time of her conversation with Osorio; the statement was not video or audio taped; no summary of the statement was written; and the statement was not mentioned in any police report. The statement surfaced for the first time ever at trial.

■ It is the actual statement of the witness, not the police officer's interpretative narrative, which qualifies for admission under section 3507. To ensure it is the witness' statement that is admitted into evidence, the actual words should be documented in writing or recorded.[6] In *Hassan–El*, we noted "the best way to properly present section 3507 evidence is by a written statement from the defendant or a redacted recorded statement of only the declarant's words."[7]

The only evidence permitted by section 3507 is the "voluntary out-of-court prior statement of a witness who is present and subject to cross-examination."[8] Therefore, the admission of the interpretive narrative by Detective Williams requires reversal of Morgan's convictions unless it was "harmless beyond a reasonable doubt."[9] Although we conclude in the next section of this opinion that the State's other evidence was sufficient for the trial court to deny Morgan's motion for a judgment of acquittal, the closeness of the rec-

---

**5.** *Huggins v. State*, 337 A.2d 28, 29–30 (Del. 1975) (internal citations and quotations omitted).

**6.** *Flonnory v. State*, 893 A.2d 507, 524 n. 30 (Del.2006).

**7.** *Hassan–El v. State*, 911 A.2d 385, 398 (Del. 2006).

**8.** Del.Code Ann. tit. 11, § 3507.

**9.** *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Van Arsdall v. Delaware*, 524 A.2d 3 (Del.1987).

ord does not support the conclusion that the erroneous application of section 3507 was harmless beyond a reasonable doubt.[10]

Accordingly, we hold the trial court committed reversible error when it permitted the State to introduce into evidence, Detective Williams' interpretive narrative of her conversation with Osorio, as a statement by Osorio that was admissible under section 3507. Therefore, Morgan's convictions must be reversed.

### *Sufficiency of Evidence*

▪ Morgan argues that if his convictions are reversed, this matter should not be remanded for a new trial because the Superior Court erroneously denied his motions for a judgment of acquittal. This Court reviews the Superior Court's denial of a motion for judgment of acquittal to determine whether any rational trier of fact, after considering the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt.[11] In applying that standard of appellate review, we do not distinguish between direct and circumstantial evidence.[12] Our appellate function is deferential, because "the jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts." [13]

Morgan argues to us that the State's evidence was insufficient to establish his complicity in the shooting. After the State rested its case at trial, Morgan moved for a judgment of acquittal. Morgan's attorney argued that there was no evidence to establish that his client was involved in the crime because "the State's evidence only showed that Morgan was present when the shooting occurred and mere presence at the scene is not enough to establish accomplice liability." The trial judge denied the motion, ruling that: "there are credibility issues here. And depending on the inferences that the jury draws from the evidence that's been presented, and in view of the fact that I must view the facts in a light most favorable to the State, the [motion is] denied."

Morgan's argument is based primarily upon the testimony of victim Darnell Lane, who indicated that Morgan's co-defendant, Fahmy, fired the shot that struck Lane's head. Lane was facing away from both defendants at the time. Upon being shot, however, he "turned around in shock" to face his two companions. Fahmy and Morgan, in turn, stared at Lane "in shock." Lane testified "then I heard a gun go off. I saw sparks come from— from Paul [Fahmy]. So I kind of figured that they were shooting at me. So I turned and I ran."

Accepting as accurate Lane's testimony that Fahmy, rather than Morgan, was the sole shooter, the State argues that evidence was nevertheless sufficient to establish Morgan's guilt as an accomplice under Title 11, § 271 of the Delaware Code, both as solicitor[14] and as aider and abettor.[15] In support of that argument, the State

**10.** *Compare Hassan–El v. State*, 911 A.2d 385 (Del.2006).

**11.** *Dixon v. State*, 567 A.2d 854, 857 (Del. 1989) (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

**12.** *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).

**13.** *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992), *overruled by Williams v. State*, 818 A.2d 906 (Del.2002).

**14.** Del.Code Ann. tit. 11, § 271(2)a.

**15.** Del.Code Ann. tit. 11, § 271(2)b.

submits that the record reflects that Morgan: borrowed Osorio's car the evening of the shooting; invited Lane to accompany him and Fahmy for a ride; and drove to a wooded area. Once out of the car, Morgan "put his hand around" Lane and said, "Darnell, we going to meet up with these girls." When the trio got into the woods and stopped, prompting Lane to ask where the girls were, Morgan reassured him that "they're coming."

The State argues this evidence supports its contention that, although Fahmy may have been the shooter, a rational trier of fact could concluded it was Morgan who lured Lane to the scene of the crime.[16] Thus, according to the State, its evidence showed that Morgan was not merely present on the night of the shooting, but also took an active role in the commission of the crime. At trial, the State also argued that Morgan's relationship with Osorio provided a motive for Morgan to shoot Lane because of Lane's alleged taking of Osorio's CD player and sexual propositioning of her.

■ The narrative summary of Osorio's conversation with Detective Williams indicated that Osorio and Morgan enjoyed a close personal relationship. For the reasons stated earlier in this opinion, the admission of that interpretive narrative under section 3507 was erroneous and constituted reversible error. Nevertheless, motive is not an element of the crime of attempted murder. Consequently, the State's inability to prove motive is not fatal to the sufficiency of its other evidence.[17]

The record reflects that, even without the evidence of motive, there was sufficient other evidence from which a rational trier of fact could have concluded that Morgan lured Lane to an isolated, wooded area, at night, where Fahmy shot Lane in the head. Therefore, the trial judge properly denied Morgan's motion to dismiss. Accordingly, we hold that the State's case was properly submitted to the jury by the trial judge under an accomplice liability theory.

### CSI Reference—No Plain Error

■ Since this matter will be remanded for a new trial, we address Morgan's final contention that challenges the prosecutor's closing argument. During the course of rebuttal summation, the prosecutor stated: "This is not CSI Las Vegas or CSI New York where police do all sorts of different tests all the time. It's fact specific. In this case it wouldn't have worked. So why do it?" Morgan's attorney did not object to those statements and the trial judge did not interrupt the prosecutor *sua sponte* to give a curative instruction. For the first time on appeal, Morgan argues that the prosecutor's reference to the CSI televisions shows "trivialized the reasonable doubt standard of proof."

■ Because there was no objection to the prosecutor's comment by Morgan's trial attorney, the applicable standard of appellate review is plain error. The doctrine of plain error is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest in-

---

**16.** *See Claudio v. State,* 585 A.2d 1278 (Del. 1991) (under pretense of giving victim a ride home, the two defendants drove victim to isolated area where he was robbed and murdered).

**17.** *See Littlejohn v. State,* 219 A.2d 155, 157 (Del.1966).

justice.[18] For a defendant to obtain a reversal based upon the plain error standard of appellate review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process.

In support of his argument that the prosecutor's references to the CSI television programs constitutes plain error, Morgan relies primarily on this Court's holding in *Boatswain v. State*.[19] The State responds that *Boatswain* is distinguishable for two reasons. First, in *Boatswain*, the prosecutor's comments about the CSI dramas directly implicated the reasonable doubt standard: "In today's day and age, unfortunately, the police and the State isn't [sic] put to the same test that they wrote 200 years ago in the Constitution [in which] they said the proof must be beyond a reasonable doubt. Unfortunately, the test ... now is, can they meet the TV expectation.... Can they meet CSI?"[20] Second, the State points out that in *Boatswain*, the defense attorney raised a timely objection, which the trial judge overruled. In *Boatswain*, this Court held that the trial judge erred by overruling the defense attorney's timely objection and by not giving a curative instruction to the jury.[21] Nevertheless, in *Boatswain*, we concluded that the error was harmless beyond a reasonable doubt.[22]

The State contends that, if the comments in *Boatswain* were deemed to be harmless error, the prosecutor's comments in Morgan's case, which made no mention of the reasonable doubt standard, could not constitute plain error. The State also relies upon this Court's recent decision in *Mathis v. State*.[23] In *Mathis*, during an opening statement, the prosecutor told the jury that the trial they were about to witness "is not CSI Miami, it's not Law and Order. Nobody involved in this case ... is an actor. These are real people."[24] On appeal, the defendant in *Mathis* argued that the prosecutor's unobjected to comment trivialized the reasonable doubt standard and constituted plain error. This Court concluded that the prosecutor's comments did not constitute plain error because: "Unlike the closing remarks in *Boatswain*, however, the prosecutor's statements here do not mislead the jury into any confusion over the State's burden of proof or trivialize or disparage the Constitutional standard of reasonable doubt. The opening statement only reminded the jury that this case was about real people, not actors."[25]

Opening statements are the opportunity for the prosecutor to tell the jury about the evidence that is going to be introduced and what he or she intends to prove. Closing statements are the opportunity for the prosecutor to argue to the jury what the State has established, based upon the evidence that was admitted during trial. Proper analogies that are based upon com-

**18.** *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

**19.** *Boatswain v. State*, 872 A.2d 959, 2005 WL 1000565 (Del.Supr.).

**20.** *Id. See* Tom R. Tyler, *Viewing CSI and the Threshold of Guilt: Managing Truth and Justice in Reality and Fiction*, 115 Yale L.J. 1050 (2006); *see also* Dr. Kimberlianne Podlas, *The CSI Effect: Exposing the Media Myth*, 16 Fordham Intell. Prop. Media & Ent. L.J. 429, 433 (2006).

**21.** *Boatswain v. State*, 872 A.2d 959, 2005 WL 1000565, *2 (Del.Supr.).

**22.** *Id.* at 959.

**23.** *Mathis v. State*, 907 A.2d 145, 2006 WL 2434741 (Del.Supr.).

**24.** *Id.* at 145.

**25.** *Id.*

mon knowledge have long been recognized as a proper form of effective and persuasive oral advocacy.[26] However, no form of argument by analogy or otherwise can suggest that a jury base its decision upon substantive facts that are not in evidence.[27]

In this case, the prosecution argued that there was no need to perform the type of tests that are seen on certain CSI television shows because those tests would not have worked. That argument is not supported by any record evidence of the tests that were available or why performing those tests would have been to no avail. Accordingly, a timely defense objection to those comments would have undoubtedly been sustained.[28] In the absence of a timely objection, however, we hold that Morgan, like the defendant in *Mathis*, failed to demonstrate that the prosecutor's comments constituted plain error.[29]

### *Conclusion*

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

**26.** Craig Lee Montz, *Why Lawyers Continue to Cross the Line in Closing Argument: An Examination of Federal and State Cases*, 28 Ohio N.U.L.Rev. 67, 87 (2001).

**27.** *Id.*

**28.** *Brokenbrough v. State*, 522 A.2d 851, 856 (Del.1987) (emphasizing the importance of a timely objection to improper closing arguments).

**29.** *Mathis v. State*, 907 A.2d 145, 2006 WL 2434741 (Del.Supr.).