# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE, | ) |
| | ) |
| v. | ) |
| | ) |
| SOLOMON COLLINS, | )   ID NO. 0910019961 |
| | ) |
| Defendant. | ) |

Date Submitted: October 30, 2014
Date Decided: January 30, 2015

On Defendant's Motion for Post Conviction Relief. **DENIED.**

## <u>ORDER</u>

Patrick J. Collins, Esq., 8 East 13th Street, Wilmington, Delaware, 19801. Attorney for Defendant.

Scott D. Goodwin, Esq., Deputy Attorney General, Delaware Department of Justice, Carvel State Office Building, 820 N. French Street, Wilmington, Delaware 19801. Attorney for the State.

**Scott, J.**

## Introduction

Before the Court is Defendant Solomon Collins' ("Defendant") Motion for Post Conviction Relief filed on September 16, 2013. The Court has reviewed the parties' submissions. For the following reasons, Defendant's Motion for Post Conviction Relief is **DENIED**.

## Background

Defendant was tried before a jury in March of 2011. Violet Gibson and Shakira Romeo – both eye witnesses to the offense – testified for the State at Defendant's trial. Both witnesses had also been interviewed by Detective Conner of the Wilmington Police Department after the incident. However, the statements the witnesses gave to Det. Conner conflicted with their in-court testimony. Det. Conner also testified for the State at Defendant's trial, and both witnesses' out-of-court statements to Det. Conner were admitted into evidence during his testimony, over defense objection.

The jury found Defendant guilty of Murder First Degree (non-capital), three counts of Reckless Endangering First Degree, two counts of Possession of a Firearm During the Commission of a Felony (PFDCF), and one count of Possession of a Deadly Weapon by a Person Prohibited (PDWBPP) relating to the shooting death of Tommear Tinnin. On July 15, 2011, Defendant was sentenced to life in prison at Level 5 on the Murder First Degree conviction and ten years in

prison at Level 5 on the weapons conviction and six years in prison at Level 5 on the Reckless Endangering convictions.

On July 29, 2011, Defendant filed a direct appeal of his convictions with the Delaware Supreme Court. The Delaware Supreme Court affirmed Defendant's convictions and sentence on direct appeal.

On September 16, 2013, Defendant filed his first Motion for Post Conviction Relief. On September 18, 2013, the Superior Court directed the Office of Conflict Counsel to appoint counsel for Defendant for purposes of representation in his Rule 61 Motion for Post Conviction Relief.

### Discussion

As an initial matter, the Court finds that Defendant's motion is not procedurally barred under Del. Super. Ct. Crim. R. 61(i).[1] The Court will now address the merits of Defendant's motion. To prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test established by the United States Supreme Court in *Strickland v. Washington.*[2] Under *Strickland*, a defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense.[3] Counsel's actions are afforded a strong presumption of reasonableness

---

[1] *See Younger v. State*, 580 A.2d 552, 554 (Del. 1990) ("This Court applies the rules of procedural requirements before giving consideration to the merits of the underlying claim for post conviction relief.")
[2] 466 U.S. 668 (1984).
[3] *Id*. at 687-88.

3

because it is "all too easy for a court examining counsel's defense after it has proved unsuccessful" to succumb to the "distorting effects of hindsight."[4] The first prong of *Strickland* therefore requires the use of an objective standard of reasonableness based on prevailing professional norms when evaluating an attorney's conduct.[5] "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it does not constitute" deficient performance.[6] The United States Supreme Court has stated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation …. [but] simply to ensure that criminal defendants receive a fair trial.'"[7] Based on that policy, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[8] A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[9] If the defendant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim necessarily fails.

---

[4] *Id.* at 689.

[5] *Neal v. State*, 80 A.2d 935, 942 (Del. 2013).

[6] *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986).

[7] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 689).

[8] *Pinholster*, 131 S. Ct. at 1403 (citations omitted).

[9] *Strickland*, 466 U.S. at 690.

Once a defendant successfully demonstrates that his counsel's conduct fell below an objective standard of reasonableness, the Court then moves to the second prong of the *Strickland* test. Under the second prong of *Strickland*, the Court will only set aside the judgment of a criminal proceeding if the defendant was prejudiced by the deficient performance. In other words, the Court will not set aside the judgment if the error had no effect on the outcome of the proceeding.[10] In order to show prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] A reasonable probability of a different result requires a "probability sufficient to undermine confidence in the outcome."[12] This standard requires more than a mere showing that the conduct "could have or might have or it is possible that [it would have]" led to a different result.[13] "The likelihood of a different result must be substantial, not just conceivable."[14]

When evaluating an appellate counsel's conduct for ineffective assistance, a reviewing court applies the same *Strickland* test applicable to trial counsel.[15] However, the defendant must "show that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably

---

[10] *Id*. at 691.
[11] *Id.* at 694.
[12] *Id.*
[13] *Ploof v. State*, 75 A.3d 840, 867 (Del. 2013).
[14] *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citations omitted).
[15] *Neal*, 80 A.3d at 946 (citations omitted).

failed to discover nonfrivolous issues and to file a merits brief raising them."[16] The United States Supreme Court has recognized that appellate counsel "need not (and should not) raise every nonfrivolous claim."[17] For that reason, it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."[18] It is "much easier for a defendant to satisfy the first prong of *Strickland* where he claims that his appellate counsel completely failed to file a merits brief."[19] However, where counsel did file a merits brief, the defendant faces a "tougher burden of showing that a particular nonfrivolous issue was 'clearly stronger than issues that counsel did present.'"[20]

Defendant raises two claims in this motion for post conviction relief. First, Defendant's motion alleges that his appellate counsel was ineffective for failing to argue on direct appeal that Romeo's out-of-court statements were inadmissible under 11 *Del. C.* § 3507 because they violated the "narrative interpretation" rule. Similarly, Defendant's second ineffective assistance of counsel claim alleges that his trial counsel was ineffective for failing to object to Det. Conner's testimony regarding Gibson's out-of-court statements under the same rules.

---

[16] *Smith v. Robbins*, 528 U.S. 259, 285 (2000).
[17] *Id.* at 288.
[18] *Id.*
[19] *Neal*, 80 A.3d at 946.
[20] *Id.* (quoting *Smith*, 528 U.S. at 288).

6

Pursuant to 11 *Del. C.* § 3507, Delaware law provides that, with a proper foundation, a witness' voluntary out-of-court prior statement is admissible even though the statement would be inadmissible under the Delaware Rules of Evidence.[21] However, the Delaware Supreme Court has emphasized that "[i]t is the statement of the declarant that is being admitted, not the interpretive narrative of the person who heard the statement. Care should be taken to guarantee that the Statute is not abused by permitting a witness, such as a police officer, to embellish the prior statement by his own interpretation."[22] To ensure that it is the witness' statement that is admitted into evidence, the actual words should be documented in writing or recorded.[23] However, even in the absence of a verbatim written, audio or video record, the Delaware Supreme Court has held that the admission of a witness' statement, as recorded in an agent's shorthand notes, was not an abuse of discretion where the agent had written down words used by the witness which provided the agent with factual information that the agent though was important to record.[24]

As to Defendant's first claim, his appellate ineffective assistance of counsel claim asserts that his appellate counsel was ineffective for failing to argue on direct appeal that the out-of-court statements made by Romeo were inadmissible under

---

[21] *Hassan-El v. State*, 911 A.2d 385, 395 (Del. 2006).
[22] *Id.* at 396.
[23] *Morgan v. State*, 922 A.2d 395, 399 (Del. 2007) (citing *Flonnery v. State*, 893 A.2d 507, 524 n.30 (Del. 2006)).
[24] *Flonnery*, 893 A.2d at 522-24.

11 *Del. C.* § 3507 because the out-of-court statements consisted only of the police officer's narrative interpretation of the witness' statements.[25] Further, Defendant argues that he was prejudiced by this deficient performance because there is a reasonable probability that Defendant would have been granted a new trial if the claim had been successfully pursued.[26] The sole issue at trial was the identity of the shooter. Det. Conner's testimony that Romeo had identified Defendant as the shooter was powerful evidence that the jury never should have heard. Defendant also argues that the jury likely gave greater weight to Det. Conner's testimony, as compared to the conflicting identification testimony of lay eye witnesses because of his status as a police officer, and that Det. Conner's testimony tipped the identification evidence in the State's favor.

On Defendant's direct appeal, his appellate counsel raised three claims, arguing that: (1) there was an insufficient foundation to admit into evidence Gibson's out-of-court statement; (2) there was an insufficient foundation to admit into evidence Romeo's out-of-court statement; and (3) the trial judge erred in administering an *Allen* charge to the jury which, as administered, was coercive.[27] Success on any of these three claims would have resulted in a new trial for Defendant.

---

[25] Def. Mot. for Post-Conviction Relief at 2, 6-8.
[26] *Id.* at 8.
[27] *See Collins v. State*, 56 A.2d 1012 (Del. 2012).

Despite Defendant's contention that his interpretive narrative argument is "at least as strong, if not stronger"[28] than the issues actually raised on appeal, Defendant has not demonstrated that this argument is "clearly stronger" than those issues. Defendant asserts that Det. Conner's testimony as to Romeo's prior statement constitutes a narrative interpretation because one page of Det. Conner's notes state only that Romeo "ID'd [Defendant]" but did "not say that Romeo identified [Defendant] as the shooter."[29] However, Defendant omits Det. Conner's other notes, which were part of the contemporaneous record of Romeo's words written directly on the line-up next to Defendant's picture.

Detective Conner conducted the interview with Romeo and testified on voir dire that he made handwritten notes during the interview, recording information and descriptions given by Romeo.[30] At trial, he also identified State's Exhibit 84 as the photo line-up he has shown to Romeo during the interview.[31] Det. Conner testified that he told Romeo that he was showing her the line-up in connection with the shooting and asked her "to point out if she recognized anyone in the line-up and how she recognized them."[32] As Romeo pointed out three different people in the line-up that she recognized, Det. Conner recorded the "words she said" directly

---

[28] Def. Mot. for Post Conviction Relief at 7.
[29] *Id.*
[30] March 24, 2011 Trial Transcript at 48-50.
[31] *Id.* at 47.
[32] *Id.* at 52.

onto the line-up, which are "written by the various pictures."[33] The Court ruled that Det. Conner could give testimony regarding Romeo's out-of-court statement to the extent supported by his notes, ruling that:

> Now on this one I will not allow anything that's an interpretation. However, I think his notes support some specific answers, the notes written in dealing with the photo line-up …. But direct questions that are supported by his notes, I will allow an answer to.[34]

On direct examination, Det. Conner testified that Romeo had identified a photo of Defendant as the shooter and the person who had been wearing a "brown hoodie."[35] Det. Conner's record of Romeo's identification, written directly on the line-up next to Defendant's picture, included the words "Shooter" and "Brown Hoodie."[36]

Had Defendant's argument been raised on appeal, the trial court's ruling on the admissibility of a § 3507 statement would have been reviewed by the Delaware Supreme Court on an abuse of discretion standard, and reversed only if the Supreme Court found that the trial court's decision to admit Romeo's statement was "clearly erroneous."[37] At trial, Det. Conner's testimony regarding Romeo's out-of-court statements was specifically limited to answering direct questions which were supported by his notes made on the photo line-up. The purpose of the Court's restriction on Det. Conner's testimony regarding Romeo's statements was

---

[33] *Id.* at 47, 51-52.
[34] *Id.* at 56.
[35] *Id.* at 68.
[36] Exhibit A to State's Response.
[37] *See Flonnery*, 893 A.2d at 515.

to ensure that Det. Conner could only testify as to the limited recording he made of Romeo's statements,[38] and not infuse his interpretation. Based on the Court's restriction on Det. Conner's testimony at trial and the *Flonnery* Court's holding on the admissibility of shorthand notes, Defendant cannot meet the stringent burden of showing that the admission of Romeo's identification of Defendant as the "Shooter" was clearly erroneous. Nor has Defendant shown that raising that argument on appeal would be "clearly stronger" than the three claims actually raised by appellate counsel. For this reason, Defendant has not met the heightened burden of showing that appellate counsel was unreasonable for failing to include this issue in the merits brief. Accordingly, Defendant has failed to demonstrate deficient performance under the first prong of *Strickland*.

Moreover, Defendant has failed to demonstrate prejudice under the second prong of *Strickland* because he cannot show that had it been raised on appeal, there is a reasonable probability that Defendant's narrative interpretation argument would have prevailed. In his affidavit, appellate counsel admits that in retrospect, he should have raised Defendant's current narrative interpretation claim on direct appeal because there was no reason not to.[39] However, to satisfy the prejudice prong under *Strickland*, Defendant must show a "substantial" likelihood of a

---

[38] The recording is Det. Conner's written notes on the photo line-up that were made contemporaneously with Romeo's statements.
[39] Appellate Counsel's Affidavit.

different result, not merely a "conceivable" one.[40] Defendant cannot demonstrate a substantial likelihood that the Delaware Supreme Court would have found that the admission of Romeo's statement was clearly erroneous under § 3507 because Romeo's identification of Defendant as the shooter is expressly recorded in Det. Conner's line-up notes. Accordingly, Defendant failed to satisfy either prong of the *Strickland* test for his ineffective assistance of counsel claim against his appellate counsel.

As to Defendant's second claim, his trial ineffective assistance of counsel claim asserts that his trial counsel's failure to object to Det. Conner's testimony regarding Gibson's prior statement was ineffective because Det. Conner's identification testimony was inadmissible under 11 *Del. C.* § 3507 because the out-of-court identification made by Gibson contradicted Det. Conner's narrative interpretation of her out-of-court statement.[41] Defendant asserts that he was prejudiced by this deficient performance for the same reasons set forth in his claim against appellate counsel. Det. Conner's testimony that Gibson had identified Defendant as either the shooter or with the shooter was powerful evidence that the jury never should have heard, and the jury likely gave more weight to Det. Conner's testimony because of his status as a police officer.[42]

---

[40] *Harrington*, 131 S. Ct. at 792.
[41] Def. Mot. for Post-Conviction Relief at 3-4.
[42] *Id.* at 8.

Defendant's claim against his trial counsel is based solely on the argument that Det. Conner's recitation of Gibson's statement constituted an "interpretive narrative" because Gibson, after indentifying Defendant as "either the shooter or the guy with the shooter," arguably contradicted herself by adding, "but he didn't have nothing to do with it."[43]   However, Defendant's argument fails because the mere presence of contradiction or ambiguity within Gibson's recorded statement does not transform Det. Conner's recitation of a portion of that statement into an interpretive narrative.  Further, in his affidavit, trial counsel observed that "it is not clear to [me] how Detective Conner is expressing his narrative opinion of what he has been told, in that his testimony mirrors that statement provided by Ms. Gibson."[44]  Rather than contest Gibson's statement on these grounds, Defendant's trial counsel adopted the strategy of attacking the credibility of Gibson's identification of Defendant.[45]   Defendant has failed to meet his burden under *Strickland* of proving either ineffective assistance or prejudice therefrom because Det. Conner's recitation of Gibson's out-of-court statement did not constitute an interpretive narrative, and Defendant has offered no evidence to rebut the presumption that trial counsel's trial strategy was reasonable.

---

[43] *Id.* at 4.

[44] Trial Counsel's Affidavit at 2.

[45] *Id.* at 2-3.

## Conclusion

For the foregoing reasons, Defendant's Motion for Post-conviction Relief is

**DENIED**.

**IT IS SO ORDERED.**

_____
**Judge Calvin L. Scott, Jr.**