IN THE SUPREME COURT OF THE STATE OF DELAWARE

MICAH J. SMITH, §
§ No. 354, 2017
    Defendant Below, §
    Appellant, §
§ Court Below—Superior Court
    v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 1512004476 (N)
§
    Plaintiff Below, §
    Appellee. §

Submitted: March 22, 2018
Decided: May 29, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **O R D E R**

This 29th day of May 2018, upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response, and the record below, it appears to the Court that:

(1) In May 2017, a Superior Court jury found the appellant, Micah J. Smith, guilty of Continuous Sexual Abuse of a Child, Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the Second Degree, and three counts of Unlawful Sexual Contact in the First Degree. The jury found Smith not guilty of one count of Unlawful Sexual Contact in the First Degree. The Superior Court sentenced Smith as follows: (i) for Continuous Sexual Abuse of a Child, twenty-five years of Level V incarceration, with credit for 243 days previously

served, suspended after six years for decreasing levels of supervision; (ii) for Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the Second Degree, eight years of Level V incarceration, suspended after one year for three years of Level III probation; and (iii) for each count of Unlawful Sexual Contact in the First Degree, eight years of Level V incarceration, suspended after one year for three years of Level III probation.  This is Smith's direct appeal.

(2)     The evidence at trial showed that Smith, who did contract attorney work in D.C., lived in the basement bedroom of his brother's house for about ten years. Smith often babysat his niece ("the Child") and two nephews.  On April 24, 2015, the Child, who was nine years old, and her mother ("the Mother") were searching the Internet for family pictures.  After they searched for the Child's name and some pictures of scantily clad women appeared, the Child became upset at the thought that Smith may have posted photographs of her without a shirt.  The Child told the Mother that Smith would hold her down, kiss her chest, and touch her private parts.

(3)     After the Child fell asleep, the Mother, who had long been displeased with Smith's presence in the house, confronted Smith.  She ordered Smith to leave the house, which he did.  The Mother's sons overheard the confrontation.  The Mother then called the Division of Family Services to report Smith's behavior.

(4)     On May 4, 2015, a forensic interviewer at the Children's Advocacy Center ("CAC") interviewed the Child.  The Child said something bad happened,

but refused to talk about it. An ongoing police investigation was closed. The Mother feared that Smith would file a civil lawsuit against her and his brother.

(5)     The Child received counseling. As part of her counseling, the Child was instructed to tell the Mother what happened to her. In October 2015, the Child told the Mother that Smith would ask her if she wanted to play Go Fish, and even if she said no, he would grab her and take her downstairs to his bedroom. The Child said that Smith would hold her down, touch her with his penis, have her touch his penis, and "pee" on her.[1] The Mother contacted the police officer who had previously worked on the case. On November 16, 2015, the Child had a second interview at the CAC. During this interview, the Child described how Smith had touched her. She said he started touching her when she was eight or about to turn eight.

(6)     At trial, the Child testified that Smith would take her to his bedroom and would touch her in places she did not like, including "down there" and her chest.[2] She said sometimes he put her hand on his private and would "pee" on her hand.[3] She would wipe her hand on the carpet or the bedspread. The Child testified that Smith would touch her every few days after she came home from school and before her parents got home. She said this was still happening when she first told the

---

[1] Appendix to Appellant's Non-Merit Brief at A206.
[2] A43-45, A61.
[3] A45.

3

Mother in May 2015. Video recordings of the CAC interviews were played at the trial.

(7) The younger of the Child's two older brothers testified that he was often in the basement watching television or playing video games when the Child would go into Smith's bedroom to play card games with Smith. Sometimes the bedroom door was closed. He recalled the Child sometimes saying she did not want to go into Smith's bedroom. The Child's oldest brother testified that he noticed the Child spending time with Smith in his bedroom when he was fifteen and the Child was eight.

(8) After the Child's second CAC interview, the police collected potential evidence from the basement and Smith's bedroom, including a bedspread. Testing of the bedspread revealed DNA profiles, but Smith was excluded as a contributor. No seminal fluid was detected on the carpet. Between Smith moving out and the police collecting evidence from the basement, the family cleaned Smith's room, including the bed linens, the Child's oldest brother had a party in the basement and used Smith's room, and the family did additional clean-up with a shop vacuum and carpet shampoo after a pipe in the basement ceiling leaked.

(9) A defense expert witness testified about best practices for forensic interviews of children and the risk of poor interview techniques leading to false memories. This witness criticized certain questions in the second CAC interview.

4

The CAC interviewer testified that she followed the interview protocol used at the CAC.

(10) Smith's mother testified that, in January 2014, the Mother told her that she hated Smith and wanted him out of her house. After Smith's mother suggested the Mother talk to her husband/Smith's brother about that, the Mother said he would not get involved, but she could. According to Smith's mother, the Child would shut the door to Smith's bedroom because her brothers' video games were too loud. Smith's mother also testified that she believed Smith had a good, healthy relationship with the Child.

(11) Smith testified that he never touched the Child in a sexual manner. He said sometimes the Child would come downstairs to his room and ask to play cards. Sometimes he or the Child would shut the door because his nephews were playing loud video games. He lived in his brother's basement to pay off his student loans and save money.

(12) On appeal, Smith's trial counsel withdrew and new counsel ("Counsel") entered an appearance. Counsel subsequently filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Counsel informed Smith of the provisions of Rule 26(c) and provided Smith with a copy of the motion to withdraw and the accompanying brief.

5

(13) Counsel also informed Smith of his right to identify any points he wished this Court to consider on appeal. Smith has raised multiple points for this Court's consideration. The State has responded to the Rule 26(c) brief and has moved to affirm the Superior Court's judgment.

(14) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[4]

(15) Smith raises the following issues on appeal: (i) the Superior Court failed to give a required alibi instruction; (ii) the Superior Court failed to cure a witness's improper references to Smith spending time in prison; (iii) the State's failure to produce the Mother's notes of her October 31, 2015 interview of the Child violated *Brady v. Maryland*;[5] (iv) the Mother had a conflict of interest that precluded her from interviewing the Child because she was a psychologist and disliked Smith; (v) the Mother failed to disclose at trial that she was a licensed therapist who specialized in sexual abuse; (vi) the Superior Court failed to hold a "pre-trial taint hearing;"[6] and

---

[4] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).
[5] 373 U.S. 83 (1963).
[6] Appellant's Non-Merit Brief under Rule 26(c), Exhibit B at 7.

6

(vii) there was insufficient evidence to convict him. As discussed below, these claims are without merit.

(16) Smith first argues that the Superior Court was required to give an alibi instruction because his mother testified that he was in California with her between December 2014 and mid-March 2015, he testified that he worked in D.C. six to seven days a week from 2013 to December 2014, and the Mother testified that he moved out of the house on April 24, 2015. The indictment alleged that the crimes occurred between April 1, 2014 and May 31, 2015. The trial record reflects that the Child said the abuse occurred between approximately March or April 2014 and mid-April 2015.

(17) Smith did not request an alibi instruction at trial so we review for plain error.[7] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[8] The burden of persuasion is on the defendant to show prejudice.[9] When a party elects not to object at trial as a tactical matter, there is a waiver that precludes plain error review on direct appeal.[10]

---

[7] Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[8] *Wainwright*, 504 A.2d at 1100.
[9] *Brown v. State*, 897 A.2d 748, 753 (Del. 2006).
[10] *Wright v. State*, 980 A.2d 1020, 1023 (Del. 2009).

(18) "The defense of alibi…is based upon evidence that the defendant 'was somewhere other than at the place the crime is alleged to have been committed when it is alleged to have been committed.'"[11] We have held that "where a defendant offers an alibi defense by introducing substantial evidence showing that he was elsewhere when the crime was committed," the Superior Court's failure to give an alibi instruction, even if one is not requested, is plain error.[12] Multiple witnesses, including Smith, testified that Smith spent time with the Child in his bedroom with the door shut during the relevant time period. Smith did not offer substantial evidence that he was somewhere else during the entire time period that the crimes were committed. Under these circumstances, the lack of an alibi instruction does not constitute plain error.

(19) Smith next argues that the Superior Court should have instructed the jury *sua sponte* to disregard two references that the Mother made to Smith spending time in prison. The Mother made the first statement—that Smith would go to prison for the rest of his life—in the context of testifying about what she said to Smith after the Child first told her what Smith had done. The Mother made the second statement—that Smith was in prison—when trying to recall the time period of a visit to California when the Child saw the maternal grandmother. Smith's counsel did

---

[11] *Gardner v. State*, 397 A.2d 1372, 1373 (Del. 1979) (quoting *Jackson v. State*, 374 A.2d 1, 2 (Del. 1977)).
[12] *Id.* at 1374.

8

not object to either statement, but on cross-examination shortly after the second statement obtained the Mother's affirmance that Smith was in jail because of the charges at issue, not something else. Smith did not object to the Mother's statements or request corrective jury instructions, so we review for plain error.[13]

(20) Smith has not shown plain error. As to the first statement, the trial record reflects that the Mother is not an attorney and that she made the statement under highly emotional circumstances. The statement was also consistent with the defense strategy to portray the Mother as someone who hated Smith and would do anything to get him out of her house. When a party elects not to object at trial as a tactical matter, there is a waiver that precludes plain error review on direct appeal.[14] As to the second statement, defense counsel obtained almost immediate clarification that Smith was in jail for the charges at issue. This clarification addressed Smith's concern that the jury could infer he was in trouble for other charges.

(21) Smith next contends that the State committed a *Brady* violation by failing to turn over the Mother's notes of her October 2015 conversation with the Child. During cross-examination, the Mother testified that she told the detective on the case that she would give him the notes, but in fact she had already given the notes to the Child's counsel and never gave them to the detective. Smith did not assert a

---

[13] *See supra* n.7.
[14] *Wright*, 980 A.2d at 1024.

9

*Brady* violation based on the notes in the Superior Court so we review for plain error.[15]

(22)   A *Brady* violation occurs when a prosecutor fails to disclose favorable evidence, including impeachment evidence, that is material to either the guilt or punishment of the defendant.[16]   Even assuming the Mother's notes were in the State's possession,[17] Smith fails to explain how those notes would be material to his guilt or punishment.  Under these circumstances, Smith has not shown plain error.

(23)   Smith next argues that the Mother had a conflict of interest that precluded her from interviewing or counseling the Child because she was a psychologist and disliked Smith.  Smith did not raise this claim below so we review for plain error.[18]   Contrary to Smith's contentions, CAC conducted the forensic interviews of the Child and the Child attended counseling with a counselor who was not her mother.  Smith also fails to cite any authority to support the proposition that the Mother could not testify or engage in typical parental behavior by responding to

---

[15] *See supra* n.7.

[16] 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 154 (1972).

[17] The record reflects that the State obtained the Child's counseling records and made them available to Smith's counsel for inspection.  At trial, after a dispute arose concerning whether the Child received counseling after October 2015, Smith's counsel argued he was entitled to additional counseling records under *Brady* because the records he inspected showed that counseling ended in October.   The Superior Court questioned whether Smith was entitled to view the Child's counseling records, but the dispute was resolved when the State provided the dates that the Child had received counseling between November 2015 and February 2016.  Smith's counsel did not indicate whether the Mother's notes were in the counseling records and he did not request production of the notes after she testified that she gave them to the Child's counselor.

[18] *See supra* n.7.

10

her child's disclosure of abuse. Smith's counsel extensively cross-examined the Mother about her dislike of Smith and her conversations with the Child regarding Smith's conduct. The Mother's dislike of Smith and her discussions with the Child were integral to the defense's theory of the case—that Mother coached the Child to make the allegations against Smith in order to get him out of the house and then to provide more details in the fall of 2015 when she feared Smith would sue her and her husband. Under these circumstances, Smith has not shown plain error.

(24) Smith next argues that the Mother failed to disclose during trial that she was a licensed therapist who specialized in sexual abuse. Smith has waived appellate review of this claim. Before the Mother testified, Smith filed a motion *in limine* to prevent the Mother from using psychological terminology, referring to classes she had taken about how to interview child sexual abuse victims, or describing her professional experience. Smith argued that the Mother was testifying as a fact witness, not an expert witness, and her professional experience could give her enhanced credibility with the jury.

(25) Smith withdrew the motion *in limine* after the State represented that the Mother understood she was to testify as to the facts, not her professional interpretation of the facts. The parties agreed that the Mother would provide only basic information about her employment, which she did. The Mother testified that she was a marriage and family therapist and provided the name of her employer. She

11

did not provide additional details about her practice. Smith's counsel made a tactical decision not to explore the details of the Mother's professional experience at trial. By making this tactical decision, Smith has waived appellate review of his disclosure claim.[19]

(26)    Smith next claims that the Superior Court's failure to hold a "pre-trial taint hearing" violated his right to a fair trial.[20] Smith did not raise this claim below so we review for plain error.[21] Smith argues that the Superior Court should have adopted the pretrial procedures set forth in a New Jersey case, *State v. Michael*.[22] In *Michaels*, the New Jersey Supreme Court held that if the State chose to re-prosecute a former nursery school teacher charged with molesting multiple children, then there had to be a pretrial hearing in which the State proved by clear and convincing evidence that the statements elicited from the children by improper interview techniques of investigators not trained in interviewing children was sufficiently reliable to be admissible at trial.[23]

(27)    Smith has not shown plain error. First, this Court has previously declined to adopt the formal procedures mandated in *Michaels*.[24] Second, this case

---

[19] *Wright*, 980 A.2d at 1024.
[20] Appellant's Non-Merit Brief under Rule 26(c), Exhibit B at 7.
[21] *See supra* n.7.
[22] 642 A.2d 1372 (N.J. 1994).
[23] *Id.* at 1384-85.
[24] *Fischbach v. State*, 1996 WL 145968, at *1 (Del. Mar. 15, 1996).

does not involve some of the issues in the *Michaels* case, which included interviews conducted by people who were not trained in interviewing children, the use of mild threats and bribing by the interviewers, and failure to videotape some of the interviews.[25] Third, Smith was able to raise issues concerning child memory and proper interviewing techniques through his expert witness.

(28) Finally, Smith argues that there was insufficient evidence to support his convictions. He emphasizes that the Mother feared he would file a civil lawsuit against her after the Child's initial accusations and none of the DNA profiles found in the area of the alleged abuse matched his DNA. Smith did not move for a directed verdict or judgment of acquittal so we review this claim for plain error.[26]

(29) A conviction for Continuous Sexual Abuse of a Child requires proof that a person who resides in the same house as a minor child or who has recurring access to the child intentionally engages in three or more acts of sexual conduct with a child under the age of eighteen over a period of time of not less than three months in duration.[27] A conviction for Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the Second Degree requires proof that a person intentionally has sexual contact with a child who is under the age of sixteen and that

---

[25] *Michaels*, 642 A.2d at 1379-80.
[26] Supr. Ct. R. 8; *Swan v. State*, 820 A.2d 342, 358 (Del. 2003).
[27] 11 *Del. C.* § 776.

13

person stands in a position of trust, authority or supervision over the child.[28]  A conviction for Unlawful Sexual Contact in the First Degree requires proof that a person intentionally has sexual contact with a child who is under the age of thirteen.[29]

(30)  There is no plain error here.  As the sole trier of fact responsible for determining witness credibility,[30] the jury could find the Child's testimony and out-of-court statements that Smith intentionally had sexual contact with her multiple times while she was eight years old credible.  Viewing the evidence in the light most favorable to the State, a rational jury could have found Smith guilty beyond a reasonable doubt of Continuous Sexual Abuse of a Child, Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision in the Second Degree, and three counts of Unlawful Sexual Contact in the First Degree.

(31)  This Court has reviewed the record carefully and has concluded that Smith's appeal is wholly without merit and devoid of any arguably appealable issue.  We also are satisfied that Counsel has made a conscientious effort to examine the record and the law and has properly determined that Smith could not raise a meritorious claim in this appeal.

---

[28] 11 *Del. C.* § 778A(1).

[29] 11 *Del. C.* § 769(a)(3).

[30] *Morgan v. State*, 922 A.2d 395, 400 (Del. 2007).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice