IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAVID MIZE, | § | |
| | § | No. 3, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court of the |
| | § | State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1512007279 (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 30, 2017
Decided: August 7, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

This 7th day of August 2017, upon consideration of the appellant's brief under Supreme Court Rule 26(c), his trial counsel's motion to withdraw, and the State's response, it appears to the Court that:

(1) After a three-day trial in September 2016, a Superior Court jury found the appellant, David Mize, guilty of Driving Under the Influence ("DUI"), Resisting Arrest, and Improper Lane Change. For the DUI conviction, Mize was sentenced, on December 2, 2016, to five years at Level V suspended after six months and successful completion of the Key Program for decreasing levels of supervision. Mize received a suspended sentence for Resisting Arrest and was fined twenty-five dollars for Improper Lane Change. This is Mize's direct appeal.

(2) On appeal, Mize's defense counsel has filed a Rule 26(c) brief and motion to withdraw asserting that there are no arguably appealable issues. Mize has responded to his counsel's presentation with a written submission listing twenty-three points for the Court's consideration. The State has responded to the position taken by counsel, the points raised by Mize, and has moved to affirm the Superior Court's judgment.

(3) The standard and scope of review applicable to the consideration of a Rule 26(c) brief and an accompanying motion to withdraw is twofold. First, the Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal.[1] Second, the Court must conduct its own review of the record to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]

(4) The evidence at trial reflects that, at about 9:00 p.m. on December 10, 2015, a concerned citizen called 911 to report a white GMC pickup truck swerving in and out of the northbound lanes of Route 1 near the Nassau Bridge in Lewes, Delaware. Corporal Michael Venero of the Delaware State Police was in the area and heard the dispatch to be on the lookout for a possible intoxicated driver.

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[2] *Penson v. Ohio*, 488 U.S. at 82.

Corporal Venero saw the truck traveling northbound on Route 1 and began following it. After observing the truck changing lanes without signaling and swerving between the two northbound lanes, Corporal Venero pulled the truck over without incident.

(5) When approaching the driver's side window of the truck, Corporal Venero saw three men sitting shoulder to shoulder. Mize was in the driver's seat, smoking a cigarette; Mize's son Jake, was seated in the middle, and the third man, William Webb, was sitting next to the passenger's window. Corporal Venero detective a strong odor of alcohol coming from Mize and noticed that his eyes appeared red and glassy.

(6) The vehicle stop did not end well for Mize. First, Mize did not cooperate with Corporal Venero during the stop and performed poorly on the field sobriety tests the officer administered. Then, to make matters worse, when Corporal Venero decided he would have to detain Mize to keep him from leaving the scene, Mize resisted, which caused Corporal Venero to perform a maneuver that took Mize to the ground. Eventually, with the assistance of a second officer who had arrived as backup, Corporal Venero was able to handcuff Mize, and the two officers carried Mize to the patrol vehicle and put him inside.

(7) With Mize in the back of the patrol vehicle, Corporal Venero took an inventory of the materials in the truck with the assistance of Mize's son, Jake.

3

During the inventory, Jake told Corporal Venero that he, Jake, might have been driving the vehicle when it was stopped.

(8)     After inventorying the truck, Corporal Venero obtained a warrant and transported Mize to Beebe Hospital where Mize's blood was drawn.  Mize's blood alcohol content was 0.12, in excess of the legal limit of 0.08.[3]

(9)     As summarized in the Rule 26(c) brief, Mize's defense at trial was that he was not the driver of the vehicle.  The brief states:

> Mize's defense was that he was not driving the vehicle. Neither the motorist who called 911 nor the arresting officer actually saw him driving the car.  Mize's son testified that he was driving the vehicle because his father, who was asleep in the front seat, was too intoxicated to drive.  The son testified that he did not have a driver's license so he switched places with his unconscious father after the officer stopped their vehicle.  After Mize was arrested and detained in the back of the police car, the son could be heard on the officer's dashboard camera telling the officer that he might have been the driver.  Also, two police officers from Bethany Beach testified they encountered Mize and the two other people in the vehicle earlier that night and took the keys from Mize and gave them to his son, with instructions to not let Mize drive.[4]

(10)    The State's witnesses at trial included the 911 caller, Corporal Venero, the phlebotomist who drew Mize's blood, and the chemist who analyzed the blood. Also, the State introduced into evidence an audio recording of the 911 call and the

---

[3] 21 *Del. C.* § 4177(a)(5).
[4] Appellant's Non-Merit Brief under Rule 26(c) at 2.

4

mobile video recording from the dash cam in Corporal Venero's patrol vehicle. Both recordings were admitted and played for the jury.

(11) On the second day of trial, after the testimony of the phlebotomist and the chemist, defense counsel moved to exclude the blood evidence on the grounds that the State had provided an outdated blood alcohol analysis protocol in discovery, and that the phlebotomist had deviated from the instructions provided in the blood kit when drawing and preserving the blood. In response to the motion to exclude, the prosecutor conceded that the State had inadvertently turned over an outdated blood analysis protocol in discovery, but he argued that the chemist who analyzed the blood had used the correct protocol, and that the testing was valid. The prosecutor disagreed that the phlebotomist did not follow the proper protocol when drawing and preserving the blood. After considering the parties' positions, the Superior Court denied the motion to exclude. The court determined that the issue about the outdated blood alcohol analysis went to the weight of the evidence, not its admissibility, and that the phlebotomist did not deviate from the manufacturer's instructions when drawing and preserving the blood.

(12) The defense witnesses included Mize, Jake, Mize's girlfriend, Valerie Roscoe, and two Bethany Beach police officers, Sergeant Brandon Elliott and Officer Matthew Skidmore. Sergeant Elliott and Officer Skidmore testified that, during the early evening of December 10, 2015, they responded to a report of a

5

disorderly person at a restaurant and bar in Bethany Beach. The officers located the person, who had been asked to leave the bar, in the private parking lot of a strip mall around the corner from the bar. The person—who was identified as Mize—was intoxicated and upset because of an altercation he had with the bartender who had ejected him from the bar.

(13) Mize told the officers that he, Jake, and Webb were at the strip mall working on a roofing job. The officers spoke to Jake and Webb, who were on the premises, and noted that neither man appeared intoxicated and that both were cooperative. The officers advised the men that they were working in violation of a town ordinance, which allowed construction activities only until 5:30 p.m. and that, in view of Mize's intoxication, they would have to leave the area, but that Mize was not allowed to drive.

(14) Mize was the owner of the only means of transportation on the job site—the white GMC truck—and he refused to allow either Jake or Webb to drive the truck because neither man had a valid driver's license. To remedy the situation, Mize called his girlfriend, Valerie Roscoe, at their home in Newark, Delaware, and asked her to drive to Bethany Beach and pick up the three men, which she agreed to do.

(15) After Mize made arrangements for the ride out of town, Sergeant Elliott and Officer Skidmore left the parking lot with the understanding that Mize, Jake,

6

and Webb would wait there for Roscoe to make the drive from Newark to pick them up. The officers testified that they told the three men that they would check on them periodically. At approximately, 8:30 p.m., Officer Skidmore saw the truck exit the parking lot and head north on Route 1. Officer Skidmore followed the truck to see who was driving it, but he was unable to catch up with it.

(16) Jake's testimony describing the events in the parking lot differed from the officers' testimony. According to Jake, Sergeant Elliott and Officer Skidmore told him that he, Webb, and Mize had to leave the area right away and that if they did not, Mize would be arrested. Jake testified that he told the officers that neither he nor Webb had a valid driver's license, but that the officers gave him permission to drive Mize's truck because they wanted Jake to get Mize out of town. Jake testified that he and Webb packed up the truck, put the semi-conscious Mize in the front seat between them, and left, with Jake driving. Jake testified that Mize fell asleep right away. Jake also testified that on the drive home, the truck sometimes swayed because of the weight of the construction materials.

(17) Jake testified that when they got stopped in Lewes, and before the police officer made it to the driver's side window, he made a split second decision to switch places with Mize, who was still sleeping, by climbing over Mize's lap and pushing him over and into the driver's seat. Jake testified that he felt badly when Mize was arrested for DUI, knowing that Mize had not been driving, but that he was

7

reluctant to tell Corporal Venero that he was the driver because he was uncertain what the consequences would be for having driven the truck without a valid driver's license and without Mize's permission. For those reasons, according to Jake, he decided to "ease into" any admission by telling Corporal Venero that he might have been the driver.[5]

(18) Mize testified that after talking to Sergeant Elliott, Officer Skidmore, and calling Roscoe, he fell asleep across the seat of the truck waiting for Roscoe to arrive from Newark to give the men a ride home. Mize testified that the next thing he remembered was waking up, noticing that the truck was moving, and noticing that Jake was driving it, which made him angry. Mize testified that he remembered "dealing with the cop on the side of the road,"[6] and that he felt like he was being "attacked" and "assaulted" by the police officer.[7] Mize did not remember going to Beebe Hospital.

(19) In his written submission on appeal, Mize raises twenty-three points, eighteen of which challenge the sufficiency of the evidence. In his other points, Mize argues that the blood evidence should have been excluded, that his defense counsel was ineffective, and that the Trial Judge abused the court's discretion when

---

[5] Trial Tr. at 185 (Sept. 15, 2016).
[6] Trial Tr. at C-13 (Sept. 16, 2016).
[7] *Id.* at C-17.

8

she interrupted the trial to hear a motion in another case. Because this is Mize's direct appeal, we have not considered his claim of ineffective assistance of counsel.[8]

(20) Mize challenges the admission of the blood evidence. This Court reviews the Superior Court's denial of a motion to exclude evidence for an abuse of discretion.[9] Under the circumstances in this case, the Court concludes that the Superior Court's denial of the motion to exclude was not an abuse of discretion.

(21) Mize contends that there was insufficient evidence to prove that he was the driver of the vehicle. In support of his contention, Mize relies on his testimony, the testimony of the other defense witnesses, and the dash cam video that recorded Jake's comment to Corporal Venero. Mize also notes that both the 911 caller and Corporal Venero testified that they could not see who was driving the truck.

(22) When reviewing a sufficiency of evidence claim, the Court will determine whether, viewing the evidence in the light most favorable to the State, a jury could have found the defendant guilty beyond a reasonable doubt.[10] Because the jury is the sole trier of fact responsible for determining witness credibility, resolving any conflicts in the testimony, and drawing all reasonable inferences from

---

[8] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).
[9] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015).
[10] *Farmer v. State*, 844 A.2d 297, 300 (Del. 1990).

the proven facts, our review of a jury's factual findings is deferential.[11] Also, we do not distinguish between direct and circumstantial evidence.[12]

(23) To convict Mize of DUI, the State was required to prove, beyond a reasonable doubt, that Mize drove the vehicle at or about the time and place charged, and that he drove the vehicle while under the influence of alcohol or with a prohibited alcohol content.[13] In this case, after carefully reviewing the trial court record, the Court concludes that there was sufficient evidence for the jury to find, beyond a reasonable doubt, that Mize was the driver. It was the jury's role to pass upon the weight of the evidence, the credibility of the witnesses, and to resolve any conflicts in the testimony.

(24) Last, Mize contends that the Trial Judge abused the court's discretion when she took a break on the morning of the last day of trial to hear a motion in another case. Mize contends that the break "allowed the jury to ponder the State's case and aggravated the jury so that they would not deliberate fully." Because the claim was not raised at trial, our review is limited to plain error.[14] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[15]

---

[11] *Morgan v. State*, 922 A.2d 395, 400 (Del. 2007).
[12] *Id.*
[13] 21 *Del. C.* § 4177(a).
[14] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[15] *Id.*

10

Mize has not demonstrated, and the record does not reflect, that he was prejudiced by the Trial Judge's decision to take a break on the morning of the last day of trial to hear a motion in another case. On plain error review, the claim is without merit.

(25) The Court has concluded that Mize's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Mize's defense counsel made a conscientious effort to examine the record and the law and properly determined that Mize could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

11